IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **TOWONA SCOTT,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: RWT 11-2865 |
| **KATHLEEN SEBELIUS,** *Secretary,* *United States Department of Health and Human Services* | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff Towona Scott is a former Program Assistant for the Department of Health and Human Services (DHS). Plaintiff claims that DHS discriminated against her on the basis of her mental and physical disabilities and retaliated against her for engaging in protected activity by firing her from her job. Plaintiff brings claims under three statutes: 1) discrimination and retaliatory termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 2) discriminatory denial of requests for reasonable accommodations and termination in violation of Section 501 of the Rehabilitation Act of 1973, 20 U.S.C. § 791 *et seq.*; and 3) retaliatory termination in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* *See* ECF No. 1.

Plaintiff has failed to establish the existence of a disability or any discriminatory or retaliatory actions by DHS. As explained below, Defendant's motion for summary judgment will therefore be granted.

**BACKGROUND**

Plaintiff was a Program Assistant, GS-0303-06, in the Office of the Deputy Chief, Ambulatory Care Services, Nursing and Patient Care Services, Clinical Center, National Institutes of Health, DHS.  *See* ECF No. 5 at 3.  Her job responsibilities included greeting individuals in reception, answering the phone, and helping organize the nurse call system.  *See id.*, Ex. 17.  Plaintiff allegedly suffers from physical and mental disabilities, including anxiety disorder, stress, and a torn knee ligament.  *Id.*, Exs. 4 and 5.

On June 10, 2008, due to a history of numerous, unapproved absences, Plaintiff's supervisor placed her on "Special Leave Procedures," instituting heightened attendance and reporting checks.  *Id.*, Ex. 9.  Due to medical conditions Plaintiff sustained after she fell down the stairs at work the prior day, Plaintiff did not report to work from June 9, 2008 until November 10, 2008.  *Id.*, Exs. 10 and 18.

On August 1, 2008, Plaintiff filed an EEO complaint against the National Institutes of Health alleging age, race, mental and physical disability, and sex discrimination, as well as retaliation.  *Id.*, Ex. 23.

On October 29, 2008, Plaintiff's supervisor issued a Memorandum to Plaintiff notifying her that she needed to return to work by November 3, 2008, and explaining the calculation of her current leave balance.  *Id.*, Ex. 10.  When Plaintiff resumed work on November 10, 2008, she was notified that she had been accepted into the Medical and Reasonable Accommodation Program (MRAP), as she could not perform certain physical demands such as climbing stairs, stooping, twisting, standing or sitting for longer than 30 minutes per hour, walking for longer than 10 minutes per hour, and handling more than ten pounds.  *Id.*, Exs. 15, 19, and 25.  Until Plaintiff was declared medically fit for duty, she would be assigned lighter duties.  *Id.*

Following her return to work in November of 2008, Plaintiff submitted medical documentation limiting her work week to four hours per day, five days per week. *Id.*, Exs. 20 and 15. She subsequently submitted additional documentation further limiting her work week to four hours per day, three days per week. *Id.,* Ex. 20. Plaintiff then took continuous leave without pay from January 21, 2009 to June 9, 2009. *Id.*, Ex. 18.

On June 9, 2009, Plaintiff's supervisor notified her in writing that her attendance was required at a June 11, 2009 meeting regarding her 2009 performance appraisal and Occupational Medical Services evaluation, but Plaintiff did not attend the meeting. *Id.*, Ex. 16. Plaintiff's June 11, 2009 Verification of Treatment form recommended that she needed further accommodations to return to work, including teleworking or a change in department. *Id.* DHS was unable to accommodate Plaintiff to such an extent, as her position of Program Assistant required her physical presence at the reception desk. *Id.*

Plaintiff's superior issued a Proposal to Remove on August 28, 2009, citing Plaintiff's failure to maintain a regular work schedule. *Id.*, Ex. 8. Plaintiff responded to the Proposal orally on October 1, 2009 and October 7, 2009, and in writing on October 8, 2009. *Id.*, Ex. 21. On October 2, 2009, Plaintiff provided a note from her orthopedic surgeon excusing her from work for a month. *Id.*, Ex. 22.

Following consideration of Plaintiff's responses, a Decision to Remove was issued to Plaintiff on November 3, 2009. *Id.*, Ex. 6. Plaintiff's termination took effect on November 12, 2009. *Id.*, Ex. 13.

In the following weeks, Plaintiff filed a Merit Systems Protection Board (MSPB) appeal regarding her termination. *See* ECF No. 5 at 2. Following discovery and an administrative hearing on March 23 and 24, 2010, Administrative Judge Daniel Turbitt issued an Initial

Decision in Plaintiff's favor on June 29, 2010. The Judge determined that DHS could not justifiably terminate Plaintiff for failure to maintain a regular work schedule as many of her absences were actually approved FMLA. *See id.,* Ex. 3 at 14. The Judge further ruled, though, that Plaintiff had failed to prove her allegations of disability discrimination and retaliation. *Id.*

DHS filed a Petition for Review on July 30, 2010. *See id.* at 2. On September 8, 2011, the MSPB Full Board granted the Petition and upheld Plaintiff's termination. *Id.* The Board noted that, at most, only 38% of the 2,531 hours that Plaintiff was absent over the course of her two years as a Program Assistant could be counted as approved FMLA absences.[1] *Id.,* Ex. 1 at 3. The Board held that DHS was well within its rights to dismiss Plaintiff for her significant unexcused absences. *Id.*

## DISCUSSION

### I. Standard of Review for Summary Judgment Motions

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). "A party opposing a properly supported motion for summary

---

[1] Under the FMLA, an employee is entitled to a maximum of 12 weeks, or 480 hours, of leave per year. *See* 5 U.S.C. § 6382(a)(1).

judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added). However, "if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Thompson Everett, Inc., v. Nat'l Cable Adv.*, 57 F.3d 1312, 1323 (4th Cir. 1995).

## II.    Application of the McDonnell Douglas Standard

In evaluating the law and material facts on the record, this Court will apply the *McDonnell Douglas* burden shifting standard. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a burden-shifting framework for evaluating claims of employment discrimination and retaliation under Title VII.[2] Under this framework, Plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997), *overruled on other grounds by Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). Once Plaintiff has established a *prima facie* case, the burden of production shifts to DHS to articulate a

---

[2] Claims of discrimination and retaliation under the Rehabilitation Act and FMLA are considered analogous to those under Title VII, and the same burden-shifting analysis applies. *See, e.g., Bosse v. Baltimore County*, 692 F. Supp. 2d 574, 588 (D. Md. 2010).

legitimate, nondiscriminatory reason for Plaintiff's termination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  Plaintiff must then prove by a preponderance of evidence that the legitimate reasons offered by her employer are but a pretext for discrimination, thus creating an inference that DHS did act with discriminatory intent.  *Id.* at 143.[3]  If Plaintiff cannot produce evidence demonstrating the falsity of her employer's proffered reasons, then DHS is entitled to summary judgment as a matter of law.  *Id.* at 148.

### III.    Count I: Violation of Title VII

Plaintiff has alleged that the termination of her employment constitutes both discrimination and retaliation in violation of Title VII.  As Plaintiff has not proved a *prima facie* case for either discrimination or retaliation, Defendant's motion for summary judgment shall be granted as to Count I.

#### A.  Discriminatory termination on the basis of mental and physical disabilities.

A *prima facie* case of discriminatory termination requires proof that: (1) Plaintiff was a member of a protected group (*i.e.*, disabled individuals); (2) Plaintiff was terminated; (3) Plaintiff was qualified to remain in her position; and (4) the position remained open to similarly qualified applicants after Plaintiff's dismissal.  *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).  The Americans with Disabilities Act of 1990 defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . or being regarded as having such an impairment."  42 U.S.C.A § 12102(2).  The phrase "major life activities" is interpreted by the regulations to mean "functions such as

---

[3] Defendant incorrectly states that Plaintiff bearsb the burden of proving "pretext plus" – *i.e.*, that the employer's "proffered reason was false, *[and] that discrimination was the real and true reason for the action.*"  *See* ECF No. 5 at 7 (emphasis added).

caring for oneself, . . . seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Plaintiff cannot prevail on this first Count, as she has not proved the required element of membership in a protected class or demonstrated the pretextual nature of DHS's explanation for her termination. At the administrative level, Judge Turbitt ruled that Plaintiff had failed to demonstrate that she meets the regulatory definition of a disabled individual or that she is significantly restricted in her activities at all. *See* ECF No. 5, Ex. 3 at 15-16. Judge Turbitt further noted that the evidence indicated that none of Plaintiff's superiors who was involved in the decision to terminate her actually considered her to be disabled. *Id.* Notably, Plaintiff did not challenge any of these initial findings before the Full Board. *Id.*, Ex. 1 at 5 n.4.

Plaintiff has presented no evidence to this Court that dictates a different result from that reached by the administrative judge. Aside from a few doctors notes identifying that she suffers from job-related stress and anxiety, and has been treated for a knee injury, *see* ECF No. 9, Exs. 1 and 9, Plaintiff has provided no additional details regarding her alleged disabilities or evidence that they substantially limit her ability to perform major life activities. Plaintiff thus has failed to establish a *prima facie* case of discriminatory termination based on her alleged disabilities.

Even if Plaintiff had established the requisite elements, she has failed to rebut the legitimate, non-discriminatory reasons that DHS has provided for terminating Plaintiff. In its Proposal to Remove, DHS noted that Plaintiff was absent from work 84% of the time in 2008 and 94% of the time in 2009. *See id.*, Ex. 8. With Plaintiff's full-time position essentially empty, DHS struggled to maintain appropriate coverage and redistribute work among other employees. *Id.* There is no indication on the record before this Court that DHS's permanent

removal of Plaintiff was motivated by anything other than the difficulties that Plaintiff's prolonged absence created.

### B. Retaliatory termination for engaging in protected activity.

To state a *prima facie* case of retaliation, Plaintiff must show that 1) she engaged in a protected activity; 2) an adverse employment action was taken against her; and 3) there was a causal connection between the first two elements. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Regarding the third element, the Fourth Circuit has "held that a causal connection . . . exists where the employer takes an adverse employment action against an employee shortly after learning of the protected activity." *Id*. at 213. If the individual enforcing the adverse employment action has no knowledge of the protected activity, however, there may not be sufficient evidence of a causal link. *See Shields v. Fed. Express Corp.*, 2005 WL 102990, at *5 (4th Cir. Jan. 19, 2005).

Here, unrebutted testimony was presented at the administrative hearing that the individual who ultimately made the decision to terminate Plaintiff was unaware of her EEO activity. *See* ECF No. 5, Ex. 3 at 17. There also was a lengthy delay between Plaintiff's filing of her EEO complaint in August of 2008 and her termination in November of 2009, negating any causal nexus between the two events. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (a thirteen month interval between an EEO charge and alleged retaliatory termination was too long a lapse to establish a causal link). Plaintiff has failed to establish the requisite elements of a *prima facie* case of retaliation.

### IV.     Count II: Violation of the Rehabilitation Act

Plaintiff alleges that Defendant violated the Rehabilitation Act by refusing to provide her with reasonable accommodations for her disabilities, leading to her termination. To establish a

*prima facie* case of discrimination under the Rehabilitation Act, Plaintiff must show that 1) she is an individual with a disability as defined by the statute; 2) she is otherwise qualified for the benefit or position in question; and 3) she suffered an adverse employment action or was denied benefits on the basis of her disability. *See Halperin*, 128 F.3d at 191. To establish a failure to accommodate claim, Plaintiff must show that 1) she is an otherwise qualified individual with a disability, *i.e.,* she is able to perform the essential functions of the job in question with or without reasonable accommodation; and 2) if a reasonable accommodation is necessary, the denial of the accommodation was made in a discriminatory fashion. *Bryant v. Better Business Bureau of Greater Maryland, Inc.,* 923 F.Supp. 720, 733 (D. Md. 1996).

Plaintiff cannot prevail on this Count, as she has not proved the required element of having a disability. To be considered disabled within the meaning of the Rehabilitation Act, an individual must show that she suffers from a medical condition that "substantially limits" his ability to perform a "major life activity." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 490, (1999). To be "substantially limiting," an impairment must interfere with a major life activity "considerably" or "to a large degree" and the impairment must be permanent or long term. *Pollard v. High's of Baltimore,* 281 F.3d 462, 467–68 (4th Cir. 2002).

As noted previously, Judge Turbitt ruled that Plaintiff's alleged anxiety, stress, and knee problems fail to meet the regulatory definition of a disability, and that Plaintiff did not demonstrate that she is significantly restricted in her activities. *See* ECF No. 5, Ex. 3 at 15-16. He further stated that the evidence indicated that none of Plaintiff's superiors who was involved in the decision to terminate her actually considered her to be disabled. *Id.* Moreover, despite Plaintiff's lack of a qualifying disability, DHS still made a good faith effort to provide Plaintiff with reasonable accommodations by granting her leave for some of her absences and reducing

her work schedule and load. *Id.* Notably, Plaintiff also did not challenge any of these initial findings before the Full Board. *Id.*, Ex. 1 at 5 n.4.

Plaintiff has presented no evidence to this Court that dictates a different result from that reached by the administrative judge. Accordingly, summary judgment on Count II must be awarded in favor of Defendant.

**V.     Count III: Violation of the Family Medical Leave Act**

In her third Count, Plaintiff claims that after exercising her right to take leave under the FMLA, DHS terminated her in retaliation. To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must prove that 1) she engaged in protect activity; 2) an adverse employment activity was taken against her; and 2) there was a causal link connecting the two actions. *See Yashenko v. Harrah's N.C. Casino Co., LLC,* 446 F.3d 541, 551 (4th Cir. 2006). Plaintiff once again has failed to establish these requisite elements.

While it is clear from the record that DHS eventually terminated Plaintiff because of her prolonged absences from work, it is also clear that DHS willingly approved Plaintiff's requested FMLA leave. *See* ECF No. 5, Ex. 8. Moreover, DHS waited a year and a half after Plaintiff first requested FMLA leave before taking any adverse action against her, thereby destroying any causal connection. *See Causey*, 162 F.3d at 803.

Most significantly, the vast majority of Plaintiff's absences cannot be counted as FMLA leave. Under the FMLA, an employee is entitled to a maximum of 12 weeks, or 480 hours, of leave per year. *See* 5 U.S.C. § 6382(a)(1). Between January of 2008 and July of 2009, Plaintiff was absent for a total of 2,531 hours. *See* ECF No. 5, Ex. 8. Thus, even if Plaintiff took her full entitlement of FMLA leave for that period *(i.e.*, 960 hours, or 480 hours per year times two years), 1,571 hours, or 62% of Plaintiff's absences, cannot legally be attributed to FMLA leave.

10

In fact, not including the maximum FMLA leave hours, Plaintiff was absent over 70% of the hours when she was expected to be at work.[4] As the Full Board ruled, less than 30% attendance at work during hours not accounted for under the FMLA was more than sufficient to sustain a charge of failure to keep a regular work schedule. *See* ECF No. 5, Ex. 1. DHS was perfectly within its rights to terminate Plaintiff based on her vast number of non-FMLA absences,[5] which rendered her unable to perform a job that depended on her actual presence at work. *See Penn v. Cnty. of Fairfax*, 2008 U.S. Dist. LEXIS 109007, at *9 (E.D.Va. Feb. 1, 2008) (granting summary judgment in favor of employer that terminated employee who was physically unable to return to work at end of FMLA leave).

## CONCLUSION

By separate Order, summary judgment on all counts is granted as a matter of law in favor of Defendant.

Dated: February 25th, 2013            /s/
                                                             ROGER W. TITUS
                                         UNITED STATES DISTRICT JUDGE

---

[4] Not counting the presumed full 960 hours of FMLA leave, this figure amounts to being absent over 70% of all expected work hours, using the scale of 40 pay periods over the relevant time period with 80 hours per pay period, for a total of 2,240 expected work hours (3,200 hours minus 960 FMLA hours).

[5] The Court sees no basis in the record for finding that a significant number of Plaintiff's absences were approved by DHS. Even if Plaintiff's allegations that DHS approved all of her numerous absences are true, DHS's need to fill the position with a full-time worker with regular attendance, Plaintiff's apparent inability to be at work and fulfill her duties for a significant length of time, and DHS's repeated warnings to Plaintiff about the potential consequences of her absences, justify Plaintiff's removal. *See, e.g., Gaskins v. Dept. of the Air Force*, 36 M.S.P.R. 331, 334-35 (1988).